No. 79-49

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

DR. JAMES SILVA, DONALD C. ROBINSON,
BILL MARKOVICH, SR., BILL MARKOVICH,
JR., BOYD TAYLOR et al.,

Plaintiffs and Respondents,

vs.

FRANK F. McGUINNESS, DOROTHY F.
McGUINNESS, EARL BRITTON and MARY
E. BRITTON,

Defendants and Appellants.

---

Appeal from: District Court of the Second Judicial District,
In and For the County of Silver Bow.
Honorable James Freebourn, Judge presiding.

Counsel of Record:

For Appellants:

D. L. Holland, Butte, Montana

For Respondents:

McCaffery and Peterson, Butte, Montana

---

Submitted on briefs: April 24, 1980

Decided: AUG 13 1980

Filed: AUG 13 1980

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendants appeal from a summary judgment in District Court, Second Judicial District, Silver Bow County, which granted specific performance in favor of the plaintiffs in several land purchase contracts.

The defendants were the owners of land near Butte, Montana, which had been surveyed and subdivided into forty-eight tracts, forty-seven of which were to be sold to plaintiffs and others. Tract 48, as shown on the certificates of survey in the clerk and recorder's office, was designated as a private roadway which followed a horseshoe-shaped course past the various lots with two connections to Four Mile Road. Each executed contract for deed contained an agreement by the defendants to install the road by December 1, 1977, over Tract 48 as shown on the certificates of survey. Each grant deed included the conveyance of an easement for the roadway "as shown on Tract 48 on Certificate of Survey." The roadway was also described in an exhibit "A" attached to each deed and was referred to in the recorded declaration of restrictive covenants.

The roadway on Tract 48 was staked on the ground some-time during September 1977 by surveyors hired by Bruce Daly, a Missoula real estate developer acting as agent for the defendants. Defendant Frank F. McGuinness, owned a home located on the north end of the property near the east exit of the Tract 48 roadway. When the roadway was staked, McGuinness learned that it would pass within eight to twelve feet from his house. McGuinness thereafter instructed Daly to amend the plat to relocate the road so it would exit on Continental Drive, rather than near his house on Four Mile Road. Daly had the east exit of the road resurveyed, and notified those

-2-

purchasers with whom he was dealing, of the change. The certificates of survey were not amended however.

At this time, all purchasers except Boyd Taylor had signed earnest money receipts. Boyd Taylor had signed a purchase contract, which had not been signed by the sellers. Some purchasers protested the roadway change and a meeting was arranged between McGuinness and Don Robinson, an attorney as well as a purchaser. At the meeting McGuinness notified Robinson that the road would not be completed on Tract 48 but would exit on Continental Drive. Robinson disputed McGuinness' right to make the change and refused an offered refund of his earnest money plus $2,500 profit.

The plaintiffs, including Robinson, signed purchase contracts between December 16 and 19, 1977, except for Taylor who had signed on November 18, 1977. Daly had not amended the written contracts to reflect the altered roadway as instructed by McGuinness. Consequently, the written contracts provided that the road would be located on Tract 48 as originally planned. McGuinness signed the contracts without reading them, believing the changes had been made. The road was completed by McGuinness as altered, exiting on Continental Drive.

Plaintiffs twice formally demanded that the roadway be constructed as provided in the agreements. This litigation was initiated after the road was completed with the east exit on Continental Drive. The District Court, after hearing testimony of the parties, granted summary judgment of specific performance to the plaintiffs.

Defendants raise three issues:

1. The District Court erred in refusing oral testimony relating to the alleged mistake in the written agreements.

-3-

2. The District Court erred in granting summary judgment.

3. The District Court erred in granting specific performance.

Defendants contend that the written agreements contain mistaken terms, either by mutual or unilateral mistake, as to the location of the roadway. Defendants urge that because of the mistake, parol evidence should have been admitted under section 72-11-304(1)(a), MCA (also section 28-2-905(1)(a), MCA) to show the intended terms of the agreements.

Defendants cannot prevail on the contention that the oral testimony was admissible in this case for at least three reasons: (1) the provisions of section 28-2-904, MCA, (2) the evidence in any event was insufficient to establish either mutual or unilateral mistake and, (3) the settled case law of this state in this fact situation is against the defendants.

Section 28-2-904, MCA, provides that the execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.

The oral testimony, heard by the District Court under a continuing objection, showed McGuinness' contention that some if not all of the prospective buyers had actual knowledge of McGuinness' changed intentions as to the roadway. He testified that a "gentlemen's agreement" reached between Robinson and himself at the December 15 meeting, was that the roadway would temporarily utilize the Continental Drive exit, and would later be completed as originally planned. There was a lack of effective communication between McGuinness

-4-

and his agent, Daly, with respect to amending the certificates of survey to show the new road provisions. The oral testimony also showed that at the time of the execution of the contracts, McGuinness failed or neglected to read the written agreement before signing.

The oral testimony fails to establish either a mutual mistake of the parties, or a mistake on the part of McGuinness which the other parties knew or suspected. It is significant that McGuinness did not ask in his pleadings for reformation of the contracts. The written instruments themselves are clear and unambiguous and this Court will not read ambiguity into a contract where the language itself is unambiguous. Nelson v. Combined Insurance Company of America (1970), 155 Mont. 105, 113, 467 P.2d 707, 712. The burden of failing to read the contracts before execution falls upon McGuinness, whose agents and attorneys prepared the contracts.

> "A party to a contract cannot avoid the contract on the ground that he made a mistake where there has been no misrepresentation, no ambiguity in the terms of the contract and the other party has no notice of such mistake and acts in good faith. Furthermore, even if one of the contracting parties believes the words of the contract mean something different, the parties to the contract are bound by the plain meaning of the words used in the agreement as properly interpreted, unless the other party knows of such mistake. (Citation omitted.)

> "One who executes a written contract is presumed to know the contents of the contract and to assent to those specified terms, in the absence of fraud, misrepresentation, or other wrongful act by the other contracting party. Absent incapacity to contract, ignorance of the contents of a written contract is not a ground for relief from liability. (Citation omitted.)

> "If a contracting party acts negligently and in such a manner as to lead others to suppose that the writing is assented to by him, the contracting party will be bound in law and in equity, even though the contracting party supposes the writing is an instrument of an entirely different character. (Citation omitted.)

"The integrity of written contracts would be destroyed if contracting parties, having admitted signing the instrument, were allowed to rescind the contract on the basis they neither read nor understood the expressed agreement. (Citation omitted.)" Quinn v. Briggs (1977), 172 Mont. 468, 475-476, 565 P.2d 297, 301.

If McGuinness failed to discover the clearly provided roadway provisions of the sales agreements it was not due to McGuinness' unilateral mistake known to or suspected by the buyers. McGuinness ". . . was under a legal duty to execute the sale agreement with the prudence and care of a reasonable and cautious businessman. Having failed to exercise such care, [McGuinness] cannot seek relief from a court of equity on the ground of unilateral mistake of fact." Quinn, supra, 172 Mont. at 478, 565 P.2d at 302.

However, McGuinness contends that under section 72-11-304(1)(a) and (b), MCA, the oral testimony was admissible because in the language of the statute the mistake or imperfection of the writing was put in issue by the pleadings, and because the validity of the agreement is the fact in dispute. Here McGuinness did contend in his pleadings that the terms of the agreements were the result of a mistake and the agreements were not valid because of the mistake. While that appears to bring his case within the broad language of section 72-11-304, MCA, still that statute must be read and harmonized with other statutes bearing on the same subject. State ex rel. Jensen Livestock Co. v. Hyslop (1940), 111 Mont. 122, 134, 107 P.2d 1088, 1093. Section 28-2-904, MCA, concerning oral negotiations preceding the execution of the instrument, is to be given the greater weight when the profferred evidence as here, is insufficient to establish mutual or unilateral mistake. Furthermore, the alleged oral agreement to change the exit of the road is barred by the

-6-

Statute of Frauds, section 28-2-903(d), MCA, since it involves an agreement to transfer an interest in real property. Aye v. Fix (1978), ___ Mont. ___, 580 P.2d 97, 99, 35 St.Rep. 667, 671. The written agreements themselves must be presumed to represent all of the transactions regarding the roadway terms. Hosch v. Howe (1932), 92 Mont. 405, 410-411, 16 P.2d 699, 700. These rules are not changed by oral testimony relating to the safety conditions of the Continental Drive exit, the alleged attorney-client relationship between Robinson/ and other plaintiffs and the individual plaintiffs' knowledge of the proposed roadway changes.

With respect to the plaintiffs' second issue, whether summary judgment was permissible here, since no material issue of fact remained after the court denied the admission of the oral testimony, summary judgment was proper. Rule 56(c), M.R.Civ.P.

The District Court granted specific performance to the plaintiffs in its summary judgment. Defendants argue that money damages were the more appropriate remedy. However, specific performance of an obligation may be compelled where money damages for nonperformance would not provide adequate relief. Section 27-1-411(2), MCA. Money damages are presumed an inadequate remedy for breach of an agreement to transfer real property. Section 27-1-419, MCA. The right to a roadway granted in the agreements is an interest in real property. Section 70-17-101(4), MCA. Specific performance therefore was an appropriate remedy under the facts of this case and the District Court did not err in granting such relief.

Judgment affirmed.

_____
Justice

-7-

We Concur:

_____
Chief Justice

_____

_____
Justices