WESTERN LOAN & SAVINGS CO., RESPONDENT, *v*. SMITH ET AL., APPELLANTS.

(No. 2,904.)

(Submitted December 19, 1910. Decided January 16, 1911.)

[113 Pac. 475.]

*Building and Loan Associations—Loans—Mortgage Foreclosure —Rights of Members—Statutes—Pleading and Proof—Parol Evidence—When Inadmissible—Interest—Presumptions.*

Written Contracts—Parol Evidence—When Inadmissible.
   1. Where, in an action on a written contract, there was not any issue of fraud or mistake in the execution of, or any imperfection in, the writing, but the provisions of such instrument were plain and unambiguous, parol evidence, the tendency of which was to vary the terms thereof, was properly excluded.

Building and Loan Associations—Cancellation of Loans—Statutes—Pleadings—Evidence—Proper Exclusion.
   2. Defendants in a foreclosure suit who sought to avoid payment of a note, given to plaintiff building and loan association, in the manner provided in the contract, by offering evidence tending to show that the loan was canceled by compliance on their part with the provisions of section 4193, Revised Codes, prescribing the method of payment by which members of building and loan associations may have their loans canceled, should have pleaded their membership; in the absence of such pleading the evidence offered was incompetent.

Same—Loans—Due Dates—Presumptions—Interest.
   3. Where the complaint in a suit by a building and loan association to foreclose a mortgage securing a note, monthly payments upon which were to be made upon certain dates, did not allege when plaintiff elected to exercise its option to treat all unpaid installments as immediately due and payable, it may be assumed that the election was made

on the date the complaint was filed; hence interest upon the install-
ments then due and to become due was to be calculated with reference
to such date.

*Appeal from District Court, Deer Lodge County; Geo. B. Wins-
ton, Judge.*

ACTION by the Western Loan & Savings Company against
Maggie J. Smith and another. From a judgment for plaintiff,
defendants appeal. Modified and affirmed.

*Mr. C. M. Sawyer,* and *Mr. W. H. Trippett,* submitted a brief
in behalf of Appellants.

*Mr. Sawyer* argued the cause orally.

*Mr. John A. Shelton* submitted a brief in behalf of Respond-
ent, and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Action to foreclose a mortgage. The amended complaint al-
leges, in substance: (1) That the plaintiff is a building and loan
association, incorporated under the laws of the state of Utah,
and licensed to do business in Montana. (2) That on June 4,
1902, the defendants executed and delivered to it their promis-
sory note, as follows:

"First Mortgage Note.

"$3,780.00.                Anaconda, Mont., June 4, 1902.

"For value received, we promise to pay to the Western Loan
& Savings Company, a corporation, of Salt Lake City, Utah, the
sum of three thousand seven hundred and eighty dollars, in pay-
ments as follows: Thirty-six and no/100 ($36.00) dollars on the
16th day of each and every month, commencing with the month
of June, 1902, until 105 payments shall have been made. Paya-
ble at the Utah Commercial & Savings Bank, Salt Lake City,
Utah.

"MAGGIE J. SMITH.
"KENNETH D. SMITH."

(3) That, to secure payment thereof according to its terms, they executed a mortgage upon certain land described therein, situated in Deer Lodge county, Montana, which was thereafter duly recorded. (4) That the defendants, beginning with June 9, 1902, made payment of twenty-eight monthly installments as stipulated in the note and mortgage; the last being made on September 28, 1904. (5) That, at the time the note and mortgage were executed and delivered, the defendants secured a policy of insurance upon the buildings situated upon the land described in the mortgage, for the sum of $1,400, payable to plaintiff; that the buildings were destroyed by fire during the year 1904, and that the full amount of the policy was paid to the plaintiff on December 22, 1904. (6) That no installments or other sums have been paid upon the promissory note, and that plaintiff offers to allow a discount, at the rate of eight per cent per annum, for the time any installments discharged by the sum of $1,400 credited upon the note at the time it was received, was made before maturity. (7) That this sum was applied: First, to the payment of the installments then due for the months of October, November, and December, 1904; and, second, to the payment of the installments thereafter to fall due. That there were thus paid installments from October, 1904, up to and including November, 1907, thirty-five in all, and $32 upon the installment to mature in December, 1907. And that in addition to these credits the defendants were allowed a discount at the rate of eight per cent *per annum* upon all the thirty-five installments the payments of which were thus accelerated, for the average time to elapse before their maturity, amounting to $145.80. (8) That, except these payments, the whole of the said note, with interest upon the monthly installments from the time they severally matured, is due and unpaid. (9) That the sum of $200 is a reasonable attorney's fee to allow for the foreclosure of the mortgage. (10) That the plaintiff, because of the failure of defendants to make payment of other installments as they matured, has elected, under a stipulation of the mortgage, to treat all the remaining installments as immediately due and

payable.   (11) That the plaintiff is now the owner and holder of the note and mortgage.   (12) That the laws of Utah contain no restriction or limitation upon the power of building and loan associations to cancel loans or to release securities, nor any provision regulating the rights of the members to pay off and discharge loans obtained by them from the association.   Judgment is demanded for a balance of $1,226.20, the sum of the unpaid installments with interest at the rate of eight per cent *per annum* upon each of them, or any part of any one of them remaining unpaid, until the date of judgment, and that the land be sold to satisfy it, together with costs including attorney's fees.

The answer is prolix and confused in its statements.   It may be epitomized as follows: It admits the execution of the note and mortgage; that the payments were made, as alleged, of all installments falling due up to and including the one paid September 28, 1904.; and that the payment of $1,400 was made on December 22, 1904.   All other allegations are denied generally or specially.   It is then alleged as ground for affirmative relief: (1) That if the plaintiff is a building and loan association organized and existing under the laws of Utah and licensed to do business in Montana, as alleged in the complaint, it cannot recover of the defendants any greater sum than $22.62, by reason of the facts herein alleged.   (2) That the defendants are the owners in fee of the land described in the mortgage.   (3) That on or about June 4, 1902, the defendants executed and delivered the note and mortgage set out in the complaint, under the following conditions: That the defendants then borrowed of plaintiff the sum of $2,000; that this sum was to bear interest at the rate of ten per cent *per annum* until paid; and that this sum of $2,000 is the same as that mentioned in the mortgage referred to in the complaint.   (4) That the note set out in the complaint was executed for the sum of $2,000, and interest calculated thereon to the amount of $1,780, making in all $3,780; the sum of $1,780 being intended as interest, at ten per cent *per annum*, for the time for which the note was to run.   That, before the note and mortgage were executed and delivered, it was agreed

by the parties that the principal sum should bear interest at the rate of ten per cent *per annum* only, and that when at any time any part of the principal sum should be paid, whether in any installment or otherwise, the interest on such amounts paid should cease. That the plaintiff, when it presented the note and mortgage for signature, falsely and fraudulently represented to the defendants that they stipulated only for interest at the rate of ten per cent per annum for the period for which the note was to run; whereas, they included interest, if the payments were made as therein provided, at the rate of twenty per cent *per annum*. That defendants signed and executed the note and mortgage believing this representation to be true; whereas, it was false. That all premiums due to plaintiff from the defendants had been paid for more than one year when the payment of the sum of $1,400 was made, and that this payment was by agreement between the parties to be applied upon the balance of the principal sum of $2,000 then remaining due, and in full satisfaction of it, except the sum of $27.62. (5) That the defendants had paid all the monthly installments provided for, up to and including the one paid on September 28, 1904, which had been applied upon the principal and interest then due. That the payments made up to and including the one then made had fully discharged all interest then due and part of the principal, leaving as a balance of the principal the sum of $1,426.78. That thereafter, on December 22, the defendants paid to the plaintiff the sum of $1,400, with the express understanding that it was to be applied upon the interest then due and then upon the principal, and was so accepted by the plaintiff. That the balance of the $2,000 thus left unpaid was the sum of $27.62, and no more. (6) That on or about December 22, 1904, the defendants tendered to plaintiff $66.77 in full satisfaction of said balance, and demanded that the note and mortgage be canceled, but that the tender was rejected and the cancellation refused. (7) That the defendants hereby pay to the clerk of the court, for the benefit of the plaintiff, the sum of $66.77, to be applied to the discharge of said balance. (8) And

that the defendants, at the time the tender was made, had fully discharged all dues, fines, premiums, assessments and interest then due and owing by them under the rules and by-laws of plaintiff, and had fully met and complied with all the conditions set forth in the complaint. Judgment is demanded that the plaintiff be required to accept the amount deposited with the clerk, or so much thereof as may be sufficient to satisfy the note and mortgage; that the note and mortgage be reformed so as to express the true intention of the parties that the sum of $2,000 would bear interest only at the rate of ten per cent *per annum* until payment should be made; that the plaintiff surrender the note and mortgage to be canceled; and that the defendants have judgment for the sum of $100 as penalty for the refusal of plaintiff to discharge and satisfy the mortgage of record. The replication joins issue upon this affirmative matter, except as to the ownership of the mortgaged property, and repeats the allegations in the complaint touching the provisions of the law of Utah relating to building and loan associations.

The mortgage contains a stipulation that, in case default be made in the payment of the note according to its terms, the whole amount thereof shall become due and payable and foreclosure proceedings be had to enforce payment. It also appears from it that the original loan was $2,000, and that the installments, to be paid monthly as stipulated for in the note, were ascertained by adding to the principal $1,780 interest and dividing the sum into 105 equal payments. From the synopsis of the answer it is apparent that the defendants have undertaken to allege two distinct grounds of relief in a single count: (1) That they had contracted for a loan of $2,000 with interest at ten per cent *per annum,* for the period for which the note was to run, with the stipulation that, when any part of the principal was paid, the interest upon such amount was to cease, and that they executed the note and mortgage set out in the complaint upon the false representation of the plaintiff, upon which they relied, that these writings contained all the provisions of the contract as made; and (2) that they were borrowing members of the plain-

tiff association, and as such were entitled to have their contract discharged at the end of one year after payment of the premium for that period, and also the premium and interest due up to the date of cancellation, together with the sum actually borrowed less the dues paid and dividends credited. At the trial the first ground was abandoned; no attempt being made to prove that any false or fraudulent representations were made on behalf of plaintiff, in reliance upon which the note and mortgage were executed. The contention was that, though the plaintiff is a corporation organized under the laws of Utah, its relations to its members and their rights are to be determined by the provisions of the laws of Montana relating to building and loan associations; otherwise, it is said, the plaintiff would be permitted to enjoy greater rights and privileges than are enjoyed by a corporation of the same or similar character created under the laws of Montana, and thus the constitutional prohibition on this subject would be infringed. (Constitution, sec. 11, Art. XV.) And the effort was made to show that, the defendants having negotiated the loan as borrowing members of the plaintiff corporation, they were entitled, after making the payments, admitted by the plaintiff, up to and including the one made December 22, 1904, and upon tender of the balance of $66.77, to have their note and mortgage canceled under the provisions of section 4193 of the Revised Codes. This section enumerates generally the powers of building and loan associations, and, among other things, provides that "any [member] may have his loan canceled upon the following terms, to-wit: After the premium for one year has been paid, and also the premium and interest up to the date or [of?] cancellation, the borrower shall pay the sum actually borrowed, less the dues paid and the dividends credited. He shall pay also any fines or other assessments required by the constitution and by-laws."

The contentions made in this court are that the trial court erred in excluding evidence as to certain oral agreements made prior to, and contemporaneously with, the execution of the contract, and that the decision is contrary to the evidence. At the

trial counsel for the plaintiff offered in evidence a statute of the state of Utah relating to building and loan associations, which was in force in 1898, and also offered to testify orally that he had examined the laws of Utah and had found that this statute comprised all the law in that state in force at the time the loan was made. The purpose of this offer evidently was to anticipate the defense of defendants by showing that the laws of Utah contained no such provision as that quoted from the Montana statute *supra,* and to sustain the contention that, since the note is upon its face made payable in Utah, the rights of the defendants were to be determined by the laws of that state. This evidence was excluded upon objection that it was immaterial. Thereupon counsel rested the case. No evidence was offered as to the corporate capacity of plaintiff; counsel assuming that, defendants having contracted with the plaintiff as a corporation, they were estopped to deny that it is in fact a corporation. The defendants acquiesced in this assumption and offered evidence tending to show that they received as a loan the sum of $2,000; that $1,780 of the principal mentioned in the note was interest; and that it was expressly agreed during the negotiations and at the time the note was executed that the defendants were to pay interest at the rate of ten per cent *per annum* only upon the sum of $2,000, and were to have the privilege of discharging the loan after the expiration of one year by paying the sum of $2,000 with interest. This evidence was excluded on the ground that it tended to vary the terms of the written contract and was incompetent. Thereupon the defendants, having introduced in evidence a passbook furnished to them by the plaintiff at the time the loan was made, which contained in consecutive order receipts for the installments paid up to September, 1904, and a copy of the by-laws of the plaintiff, rested. This evidence went in over the objection of counsel for plaintiff that it was immaterial and not relevant to any issue in the pleadings. Under the issues made by the pleadings, the evidence touching the oral agreement was incompetent. Its only office would have been to substitute, in place of the written contract, another with entirely

different terms. The defendants do not rely upon any mistake or imperfection in the writings, nor upon any matter rendering the contract invalid, nor upon any illegality in it, or fraud on the part of plaintiff in procuring it. Nor is there any ambiguity in it which it is necessary to explain by resort to extrinsic evidence; nor was there any question as to the construction to be given it. (Revised Codes, secs. 7873, 7877; *Fisher* v. *Briscoe,* 10 Mont. 124, 25 Pac. 30; *York* v. *Steward,* 21 Mont. 515, 55 Pac. 29, 43 L. R. A. 125; *Armington* v. *Stelle,* 27 Mont. 13, 94 Am. St. Rep. 811, 69 Pac. 115; *Riddell* v. *Peck-Williamson etc. Co.,* 27 Mont. 44, 69 Pac. 241; *Hogan* v. *Kelly,* 29 Mont. 485, 75 Pac. 81.)

But, assuming for the moment that it sufficiently appears from the pleadings that the plaintiff is in fact a building and loan association, and that the evidence was competent to explain the transaction so as to enable the defendants to avail themselves of the provisions of the statute, they nowhere allege in their answer that they are members, either as holders of stock certificates or otherwise. In order to avoid the payment of the note according to its terms, or to discharge the obligation assumed in it through a compliance with the statute, it was necessary for them by their pleading to bring themselves within the class of those to whom the statute applies. This they failed to do, and hence the evidence was not relevant to any issue in the case.

The other evidence admitted tended to show that the defendants were holders of a certificate of membership in the plaintiff; but evidently the district court, when it came to make its findings concluded that it was not relevant to any issue made by the pleadings and disregarded it. This action was correct. In our opinion the answer fails to state facts sufficient to warrant any relief.

It is argued by defendants that the court erred in calculating the amount due. This, we think, is true. The action was brought on February 20, 1909. The complaint is silent as to when the plaintiff elected to treat the entire debt as due. There is no evidence in the record on the subject. In the absence of

anything to show when this election was made, we think it should be assumed as done by the filing of the complaint. The plaintiff would then be entitled to interest upon each installment then due, from its due date, at the rate of eight per cent *per annum* until the date of judgment, and upon the sum of those yet to fall due, from the filing of the complaint until the date of judgment. Allowing credit for all payments and discounts, including the sum of $1,400 paid on December 22, 1904, the installments were all paid up to and including April 16, 1908, except the sum of $2.20, left unpaid of this last installment. At the time the complaint was filed, of the remaining thirty-four installments, twenty-two had fallen due, and the remaining twelve were yet to fall due. The court allowed interest on the $2.20 balance of the April 16, 1908, installment, from April 16, 1907, and seventeen installments falling due thereafter up to September 16, 1908, and upon the sum of the other installments from October 2, 1908. The error in calculating interest upon the installments already due was doubtless attributable to an error of one year in the prayer for judgment in the due dates of the installments mentioned as already due.

The order denying a new trial is affirmed. The cause is remanded to the district court, with directions to recast the interest and find the amount due as herein indicated, and thereupon to modify the decree accordingly. So modified, the decree will stand affirmed.

*Modified and affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH, having been absent, did not hear the argument and takes no part in the foregoing decision.

## OPINION ON MOTION TO AMEND DECISION.

(Submitted February 3, 1911. Decided February 8, 1911.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The respondent has submitted a motion pointing out that this court fell into error in the original opinion in assuming that the action was commenced on February 20, 1909, and fixing that as the date at which respondent's election was made. It asks that the opinion be corrected in this particular.

We find that the record discloses that the amended, not the original, complaint was filed on that date. Necessarily, therefore, the election was made at an earlier date, and the number of installments falling due because of it must be correspondingly greater. It is the fact, however, that the trial court was in error in computing interest upon the installments which had theretofore fallen due, upon the assumption that the last payment had been made on April 16, 1907, instead of April 16, 1908. To reach the correct result it will be necessary for the trial court to ascertain the date of the filing of the original complaint and to recast the interest by reference to it as the date of the election, instead of by reference to February 20, 1909.

The cause is remanded, with directions that the interest be recast upon the basis now indicated, and that the decree be modified accordingly; so modified, it will stand affirmed.

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH, not having taken part in the original decision, takes none in this.